UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROGER RAMON CASTANEDA SUAREZ (A-Number: 244-446-502),<br>Petitioner,<br>v.<br>MESA VERDE DETENTION FACILITY,<br>Respondent. | Case No. 1:26-cv-6938-TLN-JDP<br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner Roger Ramon Castaneda Suarez seeks a writ of habeas corpus under 28 U.S.C. § 2241, claiming that his immigration re-detention without a bond hearing violates due process. For the following reasons, I recommend that the petition be granted and that petitioner be immediately released.

**Background**

Using the government's CBP One application, petitioner applied for admission to enter the United States at a port of entry on March 18, 2024. ECF No. 1 at 24; ECF No. 8-1 at 1. Immigration authorities paroled him into the country and issued him a notice to appear in immigration court. ECF No. 8-1 at 1. Petitioner filed an asylum application and a request for humanitarian relief on January 18, 2025. ECF No. 1 at 13. Petitioner worked and paid taxes in the United States. *Id.* at 30-34. Petitioner attended English classes in the community. *Id.* at 57-58. Petitioner kept immigration authorities apprised of his change of address. *Id.* at 48-49.

Petitioner was convicted in Utah of driving under the influence in December 2025 and sentenced to a jail term of fifteen days with thirteen days suspended. ECF No. 8-2 at 2; ECF No. 8-3 at 9-10. On March 26, 2026, petitioner was arrested for driving on a suspended license and driving a vehicle without an interlock system.[1] ECF No. 8-2 at 1-2. Those charges remain pending. *Id.* at 1. Petitioner has no other wants, warrants, or lookouts. *Id.*

On May 14, 2026, ICE officers encountered petitioner in a Utah state jail on the driving violation. ECF No. 8-2 at 2. It appears that state authorities released him to immigration custody that day. *Id.* There is no indication that ICE provided petitioner with a pre-deprivation hearing prior to his re-detention. *Id.* ICE has held petitioner in custody since that day without a bond hearing. ECF No. 1 at 2. Respondent states that ICE re-detained petitioner under 8 U.S.C. § 1225(b)(2) as "an arriving alien who entered at a port of entry." ECF 8 at 1.

**Legal Standard**

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law. 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

---

[1] An ICE officer alleges in a report that charges were filed and are still pending arising out of this arrest. ECF 8-2 at 1-2. Petitioner's rap sheet does not contain any information regarding this arrest or any charges arising from it. *See* ECF No. 8-3.

**Analysis**

Petitioner claims that his re-detention without a bond hearing violates due process.[2] ECF No. 1 at 7. Respondent asserts that immigration authorities lawfully re-detained petitioner pursuant to 8 U.S.C. § 1225(b)(2), which authorizes mandatory detention without bond.[3] ECF No. 8 at 1. Respondent acknowledges that the Court of Appeals has rejected its argument that section 1225(b) applies to noncitizens like petitioner who are detained by ICE in the interior of the United States. *See Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1165 (9th Cir. 2026).[4] The Court of Appeals' ruling accords with those of five other Courts of Appeals. *See Barbosa da Cunha v. Freden*, 175 F.4th 61, 69 (2d Cir. 2026); *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Mia.*, 175 F.4th 1258, 1262 (11th Cir. 2026); *Lopez-Campos v. Raycraft*, 175 F.4th 713, 732 (6th Cir. 2026); *Santillan Quiroz v. Mullin*, 180 F.4th 1226, 1246 (10th Cir. 2026); *Cirrus Rojas v. Olson*, 183 F.4th 909, 915 (7th Cir. 2026). Respondent otherwise fails to address petitioner's due process argument except to acknowledge that "this case fits into the category of cases in which the Court has found that petitioner's previous parole into the United States is more significant than the manner of entry." ECF No. 8 at 1.

Courts analyze procedural due process claims in two steps: first, we consider whether there exists a protected liberty interest under the Due Process Clause, and, second, we evaluate what procedures are necessary to ensure that any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). I consider each in turn.

---

[2] Petitioner's pro se filing is entitled to liberal construction. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Charan S. v. Warden of the Cal. City Det. Facility*, No. 1:26-cv-3017-TLN-JDP, 2026 WL 1144158, at *1 n.1 (E.D. Cal. Apr. 28, 2026) (applying liberal construction to pro se immigration habeas filing).

[3] In *Matter of Yajure Hurtado*, the BIA held that immigration judges lack jurisdiction to hear a request for bond where the noncitizen is detained under section 1225(b)(2). 29 I. & N. Dec. 216, 228-29 (BIA 2025). Petitioner indicates that he could not obtain a bond hearing in immigration court because the court relied on *Yajure Hurtado*. *See* ECF No. 1 at 3.

[4] Because the mandate has yet to be issued, the court takes advisory notice of this ruling. *See* Fed. R. App. Pro. 41.

Courts in this Circuit have repeatedly found that noncitizens released from immigration custody acquire a liberty interest in their continued release. *See Labrador-Prato v. Noem*, 818 F. Supp. 3d 1113, 1120 (E.D. Cal. Dec. 2, 2025); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025).

Petitioner's case is no different. Petitioner applied for admission into the United States using the CBP One application. ECF No. 1 at 24. Immigration authorities reviewed his application and paroled him into the United States on March 18, 2024. ECF No. 8-1 at 1; ECF No. 8-2 at 2. Petitioner lived in the United States for two years prior to his re-detention by ICE on May 14, 2026. ECF No. 8-2 at 2. During that time, he applied for asylum, worked, paid taxes, took English classes, and kept immigration authorities up to date on his address. ECF No. 1 at 12, 30-34, 48-49, 52, 57-58.

Petitioner's initial release and time out of custody have created a substantial constitutionally protected liberty interest in continued release. *See Guillermo M. R. v. Kaiser*, No. 25-cv-5436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-5259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding released noncitizens to have strong liberty interests); *see also Capote v. Warden, Cal. City Corr. Ctr.*, No. 1:26-cv-3168-JLT-EPG, 2026 WL 1415306, *2 (E.D. Cal. May 20, 2026) (granting writ of habeas corpus where petitioner had been previously paroled into the United States pursuant to the Cuban Humanitarian Parole program).

Accordingly, the court must next determine what procedural protections the government should have afforded petitioner before depriving him of that liberty interest. This requires balancing the factors laid out in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context). The *Mathews* test requires courts to consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and

> administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

First, petitioner has a significant private interest in his continued release. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Petitioner acquired a private interest in continued release during two years of release in the United States. *See Noori v. LaRose*, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *10 (S.D. Cal. Oct. 1, 2025) ("Petitioner has a private interest in remaining free, which developed over the year he resided in the United States.").

Second, a pre-deprivation bond hearing in immigration court would have addressed that interest, and the risk of erroneous deprivation without a bond hearing is high. Prior to releasing petitioner into the United States, respondent necessarily determined that he presented neither a danger to the community nor a risk of flight. *See Pinchi*, 792 F. Supp. 3d at 1034 (explaining that a petitioner's "release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community"). Absent a pre-deprivation bond hearing in front of a neutral arbiter, the risk of erroneous deprivation is high given the possibility that petitioner's re-detention will not be pursuant to a valid state interest. *See Omer G.G. v. Kaiser*, No. 1:25-cv-1471-KES-SAB, 2025 WL 3254999, at *7 (E.D. Cal. Nov. 22, 2025) ("Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community.") (quoting *Zadvydas*, 533 U.S. at 690).

"Where, as here, '[the petitioner] has not received any bond or custody . . . hearing,' 'the risk of an erroneous deprivation [of liberty] is high' because neither the government nor [the petitioner] has had an opportunity to determine whether there is any valid basis for her detention." *Pinchi*, 792 F. Supp. 3d at 1035 (quoting *Singh v. Andrews*, No. 1:25-cv-0801, 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025)). Respondent offers no evidence or argument indicating that any procedural safeguards have been employed following petitioner's re-detention; more

generally, they give the court no reason to believe that any efforts have been made to prevent erroneous deprivation of petitioner's liberty. *See id*. On the contrary, the fact that the government maintains that petitioner is subject to mandatory detention without a bond hearing indicates that it has not made sufficient efforts to prevent an erroneous deprivation of his liberty. *See* ECF No. 8 at 1. Accordingly, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *See A.E. v. Andrews*, No. 1:25-cv-0107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025), *report and recommendation adopted*, 2025 WL 1808676 (E.D. Cal. July 1, 2025).

"Third, the Government's interest in detaining Petitioner without . . . a hearing is 'low.'" *Salazar v. Casey*, No. 25-cv-2784-JLS, 2025 WL 3063629, at *5 (S.D. Cal. Nov. 3, 2025) (citation omitted). Indeed, respondent has provided no information about the additional burden that would fall on it as a result of being required to provide a bond hearing and suggests that a bond hearing is the correct remedy here. *See* ECF No. 8 at 1. "In immigration court, custody hearings are routine and impose a 'minimal' cost." *Carballo v. Andrews*, No. 1:25-cv-0978-KES-EPG, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) (quoting *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)).

Accordingly, a consideration of the *Mathews* factors demonstrates that petitioner's re-detention without a bond hearing violates his due process rights. Given this finding, I must determine the appropriate remedy. Petitioner seeks immediate release or a "prompt and meaningful custody review." ECF No. 1 at 8. Respondent suggests that this case is "in the category of cases in which the Court has ordered a bond hearing due to petitioner's criminal history." ECF No. 8 at 1.

The Supreme Court has recognized that "[h]abeas is at its core a remedy for unlawful executive detention," and the "typical remedy for such detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure *release* from unlawful detention."). To satisfy due process, "the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v.*

*Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). In some circumstances, however, the Court has held that a post-deprivation hearing satisfies due process, such as where there is "the necessity of quick action by the State or the impracticality of providing any predeprivation process." *Id*. at 128 (cleaned up). Where a petitioner is entitled to a pre-deprivation hearing, courts have found that "[t]he appropriate relief . . . is their immediate release from custody, and to be provided with relief returning them to status quo ante, i.e., the last uncontested status which preceded the pending controversy." *Cardin Alvarez v. Rivas*, No. 25-cv-2943-PHX-GMS, 2025 WL 2898389, at *21 (D. Ariz. Oct. 7, 2025), *report and recommendation adopted in part, rejected in part on other grounds*, 2025 WL 2899092 (D. Ariz. Oct. 10, 2025).

Moreover, where the government has erroneously applied section 1225(b) to a petitioner, courts have ordered immediate release. *See Morillo v. Albarran*, No. 1:25-cv-1533-DJC-AC, 2025 WL 3190899, at *5 (E.D. Cal. Nov. 15, 2025); *Cortes Cortes v. Warden of the Golden State Annex Det. Facility*, No. 1:26-cv-6609-DC-JDP, 2026 WL 2494984, at * 3 (E.D. Cal. Aug. 25, 2026); *Zurita Navarro v. Warden, Cent. Valley Annex Det. Facility*, No. 1:26-cv-5661-DAD-SCR, 2026 WL 2294963 (E.D. Cal. Aug. 10, 2026). In *Feng v. Lyons*, the court held that a delay "in providing the statutorily mandated bond hearing violates [a petitioner's] due process rights" and found that the "[p]rovision of a bond hearing after months of detention without the opportunity to seek release on bond cannot be said to satisfy due process where that bond hearing is a matter of statutory right." No. 1:26-cv-0235-DJC-SCR, 2026 WL 472635, at *1 (E.D. Cal. Feb. 19, 2026) (citations omitted).

Here, petitioner was at liberty in the United States for two years prior to being re-detained by ICE. ECF No. 8-2 at 2. He had been convicted of a DUI in late 2025 and re-arrested for illegally driving after that conviction. *Id.* Immigration officers found him in a local jail, which released him to immigration custody. *Id.* However, respondent does not argue that there was the "necessity of quick action" by ICE such that petitioner could not have been provided a pre-deprivation hearing. *See Zinermon*, 494 U.S. at 128. Indeed, courts have found that a pre-deprivation hearing is still required where the petitioner is initially arrested by local law enforcement and then transferred to ICE custody. *See J. O. J.L. v. Blanche*, No. 1:26-cv-4142-

DAD-JDP, 2026 WL 1745732, at *4 (E.D. Cal. June 17, 2026), *report and recommendation adopted*, 2026 WL 1832766, at *1 (E.D. Cal. June 25, 2026); *Osorto v. Warden of Mesa Verde Det. Facility*, No. 1:26-cv-2915-DJC-JDP, 2026 WL 1224248, at *4 (E.D. Cal. May 5, 2026), *report and recommendation adopted*, 2026 WL 1330554 (E.D. Cal. May 13, 2026)*; Adamchuk v. Casey*, No. 3:26-cv-1149-RBM-VET, 2026 WL 785532, at *1-2 (S.D. Cal. Mar. 20, 2026). Moreover, respondent does not argue that petitioner is a danger or a flight risk. *See* ECF No. 8.

Under these circumstances, I find that the "typical remedy" of release, *see Munaf*, 553 U.S. at 693, is appropriate because the government has not provided a lawful justification for re-detaining petitioner without a pre-deprivation hearing. Petitioner's due process rights have been violated such that the provision of a bond hearing is constitutionally insufficient. *See Feng*, 2026 WL 472635, at *1. Accordingly, the appropriate relief is immediate release from custody, thereby returning him to the "status quo ante." *See Cardin Alvarez*, 2025 WL 2898389, at *21.

**Conclusion**

Accordingly, it is hereby RECOMMENDED that:

1. The petition for writ of habeas corpus, ECF No. 1, be GRANTED.

2. Respondent be ordered to immediately release petitioner (A-Number: 244-446-502) from its custody on the same conditions, if any, as his prior release. Respondent shall not impose any additional restrictions on petitioner, unless that is determined to be necessary at a future pre-deprivation hearing. If the government seeks to re-detain petitioner, it must provide no less than seven days' notice to petitioner and must hold a constitutionally compliant pre-deprivation bond hearing before a neutral arbiter at which the government bears the burden of proving flight risk or danger by clear and convincing evidence. This order does not address the circumstances in which respondent may detain petitioner in the event petitioner becomes subject to an executable final order of removal.

3. The Clerk of Court be directed to serve Mesa Verde Detention Facility with a copy of this order.

4. The Clerk of Court be ordered to enter judgment accordingly and close this case.

These findings and recommendations are submitted to the United States District Judge

assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within three days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within three days of service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: September 24, 2026

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE